**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| DEL CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>TEXAS J&A SERVICE, LLC,<br><br>    Defendant. | Civil Action No. 7:26-cv-00309<br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

1.      Plaintiff DEL Corporation ("DEL" or "Plaintiff") files this Complaint for Patent Infringement against Defendant Texas J&A Service, LLC ("Texas J&A" or "Defendant"), and alleges as follows:

**NATURE OF THE ACTION**

2.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq.

3.      DEL is an innovator in the field of flowback separation technology used in hydrocarbon-well operations. Through substantial investment in research, development, testing, and field deployment, DEL developed proprietary systems and methods for separating gas, liquids, and solids recovered from producing wells.  DEL's innovations include hydrocyclone-based flowback separation systems commercialized through DEL's *Sandcat$^{TM}$* product line, as well as a feedbox-based flowback separation systems also capable of separating gas, liquids, and solids recovered from producing wells.  DEL has sought and obtained U.S. patent protection for these innovations.

1

4.     Texas J&A has commercialized and deployed competing flowback separation systems utilizing both DEL's hydrocyclone-based flowback separation technology and DEL's feedbox-based flowback separation technology.  Specifically, Texas J&A makes, uses, offers to sell, sells, and/or imports a hydrocyclone-based flowback separation system (the "Hydrocyclone Accused System") utilizing DEL's patented hydrocyclone-based flowback separation technology, and Texas J&A also makes, uses, offers to sell, sells, and/or imports a feedbox-based flowback separation system marketed as the "Hercules" Sand Management Unit (the "Hercules Accused System").  The Hydrocyclone Accused System and Hercules Accused System are collectively referred to herein as the "Accused Systems."

5.     DEL seeks relief for Texas J&A's unauthorized making, using, offering to sell, selling, and/or importing infringing flowback separation systems, including by renting, marketing, deploying, commercializing, and otherwise exploiting those systems.

6.     The Hydrocyclone Accused System infringes at least Claim 1 of U.S. Patent No. 11,634,953 (the "'953 Patent"), U.S. Patent No. 11,326,406 (the "'406 Patent"), and U.S. Patent No. 10,751,654 (the "'654 Patent") (collectively, the "Sandcat Patents").  The Hercules Accused System infringes at least Claim 1 of U.S. Patent No. 11,040,300 (the "'300 Patent").

7.     The Sandcat Patents and the '300 Patent are collectively referred to herein as the "Asserted Patents."

**THE PARTIES**

8.     DEL is a corporation organized and existing under the laws of the State of Louisiana, having a principal place of business at 436 Highway 93, Scott, Louisiana 70583.

2

9.    DEL designs, manufactures, rents, markets, sells, and supports customized tank systems and equipment for oilfield and industrial applications, including dredging, dewatering, solids separation, flowback operations, solids control, and solids handling.

10.    On information and belief, Texas J&A is a limited liability company organized and existing under the laws of the State of Texas.

11.    On information and belief, Texas J&A maintains a principal office located at 3166 Pipe Court, Grand Junction, Colorado 81504.

12.    On information and belief, Texas J&A maintains an office and a regular and established place of business located at 1307 W. CR-118, Midland, Texas 79706.

13.    On information and belief, Texas J&A conducts business in this District and from its Midland office, including manufacturing, using, renting, selling, offering for sale, marketing, servicing, deploying, and/or supporting the Accused Systems.

## JURISDICTION AND VENUE

14.    This action arises under the patent laws of the United States, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

15.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16.    This Court has personal jurisdiction over Texas J&A because Texas J&A is organized under the laws of Texas, conducts business in Texas, maintains an office and a regular and established place of business in this District, and has committed acts of patent infringement in Texas and in this District.

3

#112171557v4

17.     On information and belief, Texas J&A has purposefully availed itself of the privilege of conducting business in Texas by, among other things, making, using, renting, selling, offering for sale, marketing, servicing, deploying, and supporting the Accused Systems in Texas.

18.     Venue is proper in this Court under 28 U.S.C. § 1400(b).

19.     On information and belief, Texas J&A maintains a regular and established place of business in this District at 1307 W. CR-118, Midland, Texas 79706. On information and belief, that facility is owned or leased by Texas J&A, bears Texas J&A signage, is staffed by Texas J&A employees, and is used by Texas J&A to store, stage, maintain, repair, and dispatch flowback separation equipment, including the Accused Systems.

20.     On information and belief, Texas J&A has committed acts of infringement in this District, including by making, using, renting, selling, offering for sale, marketing, and deploying the Accused Systems in this District.

21.     Assignment to the Midland-Odessa Division is proper because Texas J&A maintains an office in Midland, Texas and because substantial events relating to the claims asserted herein occurred in, are directed to, or are connected with this Division.

## BACKGROUND AND GENERAL ALLEGATIONS

### DEL and the Sandcat Technology

22.     DEL conceived and developed proprietary flowback separation technology capable of separating gas, liquid, and solids recovered from hydrocarbon wells.

23.     DEL's flowback separation technology addresses the need to remove sand and other solids from well fluids while improving operational efficiency, reducing handling requirements, and facilitating reuse or disposal of recovered materials.

4

#112171557v4

24.    DEL commercializes its hydrocyclone-based flowback separation technology under or in connection with the Sandcat system.

25.    The Sandcat Patents disclose and claim, among other things, flowback separation systems that include tanks, degassing units, conveying devices such as augers, slurry pumps, hydrocyclone units, shakers, conduits, and overflow devices.

26.    The '300 Patent discloses and claims, among other things, a flowback separation system in which a dispersing device, such as a feedbox or possum-belly-style device, receives slurry from a conduit and discharges it onto a shaker without itself separating solids.

27.    DEL owns all right, title, and interest in the Asserted Patents and has the right to sue for and recover damages for past, present, and future infringement of the Asserted Patents.

28.    DEL manufactures, rents, and sells flowback separation systems, including its Sandcat system, that practice one or more claims of the Sandcat Patents. DEL has marked those systems with the numbers of the Sandcat Patents in compliance with 35 U.S.C. § 287.

**The Asserted Patents**

29.    The '953 Patent, titled "Flow Back Separation System and Method," duly and legally issued by the United States Patent and Trademark Office on April 25, 2023. A copy of the '953 Patent is attached as Exhibit A.

30.    The '406 Patent, titled "Flow Back Separation System and Method," duly and legally issued by the United States Patent and Trademark Office on May 10, 2022. A copy of the '406 Patent is attached as Exhibit B.

31.    The '654 Patent, titled "Flow Back Separation System and Method," duly and legally issued by the United States Patent and Trademark Office on August 25, 2020. A copy of the '654 Patent is attached as Exhibit C.

#112171557v4

32.     The '300 Patent, titled "Flow Back Separation System with Dispersing Device," duly and legally issued by the United States Patent and Trademark Office on June 22, 2021. A copy of the '300 Patent is attached as Exhibit D.

**Texas J&A's Accused Systems**

33.     On information and belief, Texas J&A has made, used, rented, sold, offered for sale, imported, marketed, deployed, and/or commercialized flowback separation systems that infringe the Asserted Patents.

34.     Texas J&A publicly promoted a flowback separation system identified as the "Hercules" Sand Management Unit.

35.     Public social-media and Defendant's website materials, attached hereto as Exhibit F, identify the Hercules Accused System as a sand-management unit fabricated or provided by or for Texas J&A, and depict a flowback separation system including, among other components, a tank, degassing equipment, conduits, shaker equipment, and a dispersing-device or feedbox-style component.

36.     On information and belief, Texas J&A has four Hercules Accused Systems in its inventory.

37.     Texas J&A received pre-suit notice of the '300 Patent and DEL's infringement allegations concerning the Hercules Accused System through written notice dated June 11, 2025.

38.     DEL has discovered that Texas J&A is commercializing a flowback separation system using hydrocyclones. In that configuration, the Hydrocyclone Accused System infringes the Sandcat Patents. DEL is presently unaware of the commercial designation Texas J&A uses for that system.

6

39.     Photographs and other information obtained by DEL show that the Hydrocyclone Accused System includes, among other things, a tank, a degassing unit, a conveying device such as an auger, a slurry pump, hydrocyclone units, a shaker, conduits, and an overflow device. Photographs of the Hydrocyclone Accused System are attached as Exhibit E.

40.     On information and belief, the Hydrocyclone Accused System was operating at a well location in North Louisiana.

41.     Texas J&A, through its counsel, has had knowledge of DEL's Sandcat Patents at least as early as November 14, 2025, based on correspondence with DEL's counsel.

**DETAILED INFRINGEMENT ALLEGATIONS FOR THE SANDCAT PATENTS**

42.     Texas J&A has been and continues to directly infringe the Sandcat Patents by making, using, renting, selling, offering to sell, importing, marketing, and/or commercializing the Hydrocyclone Accused System in this District and elsewhere in the United States without DEL's authorization, including by renting, marketing, deploying, supporting, and commercializing that system for use in oilfield flowback separation operations.

43.     The Hydrocyclone Accused System embodies each limitation of at least Claim 1 of each of the Sandcat Patents, as set forth below.

**COUNT I**
**INFRINGEMENT OF U.S. PATENT NO. 11,634,953**

44.     DEL repeats and realleges the preceding paragraphs as if fully set forth herein.

45.     Texas J&A has directly infringed and continues to directly infringe at least Claim 1 of the '953 Patent under 35 U.S.C. § 271(a) by making, using, renting, selling, offering to sell, importing, marketing, and/or commercializing the Hydrocyclone Accused System.

46.     Claim 1 of the '953 Patent recites the following limitations, with bracketed labels added for ease of reference:

**Claim 1 of the '953 Patent**

| Element | Claim Language |
|---|---|
| [P] | A system for separating solids from a slurry recovered from a hydrocarbon well, comprising: |
| [1] | a tank having side walls, a bottom, and a top, the tank having a front section, a mid-section, and a rear section; |
| [2] | a degassing unit operatively associated with the tank, the degassing unit removing an entrained gas from the slurry and discharging a first slurry into the tank whereby a first settling of a first solids within the first slurry takes place; |
| [3] | a conveying device operatively positioned within the tank, the conveying device configured to cause the first solids to move proximate to an inlet of a first conduit operatively positioned within the tank; |
| [4] | a pump in fluid communication with the first conduit, the pump configured to pump a second slurry containing the first solids through the first conduit; |
| [5] | a hydrocyclone unit in fluid communication with an outlet of the first conduit, the hydrocyclone unit receiving and processing the second slurry to produce an overflow comprising a first clean fluid and an underflow comprising the first solids; |
| [6] | a shaker operatively associated with the hydrocyclone unit, the shaker configured to receive the underflow from the hydrocyclone unit and to cause a dewatering of the first solids to produce a dried first solids, the shaker further configured to convey the dried first solids for disposal or reuse, the shaker producing an underflow comprising a third slurry comprising a second solids, the shaker configured for depositing the third slurry into the tank for recirculation through the first conduit to the hydrocyclone unit; |
| [7] | a second conduit having an inlet and an outlet, the inlet of the second conduit in operative association with the hydrocyclone unit to receive and provide a flow path for the overflow comprising the first clean fluid, the outlet of the second conduit operatively positioned within the tank for discharge of the overflow comprising the first clean fluid therein; and |
| [8] | an overflow device operatively positioned within the tank, the overflow device configured to provide an outlet for the first clean fluid to exit the tank. |

47.     The Hydrocyclone Accused System is a system for separating solids from a slurry recovered from a hydrocarbon well. The system is used in oilfield flowback operations and is configured to process fluids containing sand and other solids recovered from a hydrocarbon well. *See* Exhibit E. This corresponds to the preamble of Claim 1 of the '953 Patent.

48.     The Hydrocyclone Accused System includes a tank having side walls, a bottom, and a top, the tank having a front section, a mid-section, and a rear section. Photographs of the Hydrocyclone Accused System depict a large trailer-mounted flowback separation tank extending along substantially the entire length of the system. *See* Exhibit E. This corresponds to element [1] of Claim 1 of the '953 Patent.

8

49.     The Hydrocyclone Accused System includes a degassing unit operatively associated with the tank. Upon information and belief, the gas buster removes entrained gas from the slurry and discharges a first slurry into the tank, whereby a first settling of solids within the first slurry takes place. *See* Exhibit E. This corresponds to element [2] of Claim 1 of the '953 Patent.

50.     Upon information and belief, the Hydrocyclone Accused System includes a conveying device in the form of an auger operatively positioned within the tank and configured to cause settled solids to move proximate to an inlet of a first conduit operatively positioned within the tank. The auger in this context is used to move settled solids along the bottom of the tank toward a pump intake or conduit inlet. *See* Exhibit E. This corresponds to element [3] of Claim 1 of the '953 Patent.

51.     Upon information and belief, the Hydrocyclone Accused System includes a pump in fluid communication with the first conduit, the pump configured to pump a second slurry containing the first solids through the first conduit. The photographed and investigated system includes external piping and flowback processing equipment arranged to convey slurry from the tank to the hydrocyclone equipment. *See* Exhibit E. This corresponds to element [4] of Claim 1 of the '953 Patent.

52.     The Hydrocyclone Accused System includes one or more hydrocyclone units in fluid communication with an outlet of the first conduit. Upon information and belief, the hydrocyclone unit receives and processes the second slurry to produce an overflow comprising a first clean fluid and an underflow comprising the first solids. *See* Exhibit E. This corresponds to element [5] of Claim 1 of the '953 Patent.

#112171557v4

53. The Hydrocyclone Accused System includes a shaker operatively associated with the hydrocyclone unit. Upon information and belief, the shaker is configured to receive the underflow from the hydrocyclone unit and to dewater solids to produce dried solids for disposal or reuse. Upon information and belief, the shaker produces an underflow comprising a third slurry containing additional solids, and deposits that underflow into the tank for recirculation through the first conduit to the hydrocyclone unit. *See* Exhibit E. This corresponds to element [6] of Claim 1 of the '953 Patent.

54. Upon information and belief, the Hydrocyclone Accused System includes a second conduit having an inlet and an outlet, the inlet being in operative association with the hydrocyclone unit to receive and provide a flow path for the overflow comprising clean fluid, and the outlet being operatively positioned within the tank for discharge of the overflow comprising clean fluid therein. The Hydrocyclone Accused System's visible piping and hydrocyclone configuration support the presence of fluid conduits for routing hydrocyclone overflow back to the tank. This corresponds to element [7] of Claim 1 of the '953 Patent. *See* Exhibit E.

55. Upon information and belief, the Hydrocyclone Accused System includes an overflow device operatively positioned within the tank and configured to provide an outlet for clean fluid to exit the tank. A flowback separation tank of this type includes a fluid outlet or overflow device for discharge of processed fluid. *See* Exhibit E. This corresponds to element [8] of Claim 1 of the '953 Patent.

56. Accordingly, Texas J&A's manufacture, use, rental, sale, offer for sale, importation, marketing, and/or commercialization of the Hydrocyclone Accused System infringes at least Claim 1 of the '953 Patent.

57. Texas J&A has damaged DEL in an amount to be determined at trial.

10

58.     At least upon service of this Complaint, if not earlier as of the November 14, 2025, correspondence with DEL's counsel, Texas J&A had or will have knowledge of the '953 Patent and its infringement thereof. Texas J&A's continued infringement after such notice will be willful, deliberate, and in disregard of DEL's patent rights.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 11,326,406

59.     DEL repeats and realleges the preceding paragraphs as if fully set forth herein.

60.     Texas J&A has directly infringed and continues to directly infringe at least Claim 1 of the '406 Patent under 35 U.S.C. § 271(a) by making, using, renting, selling, offering to sell, importing, marketing, and/or commercializing the Hydrocyclone Accused System.

61.     Claim 1 of the '406 Patent recites the following limitations, with bracketed labels added for ease of reference:

### Claim 1 of the '406 Patent

| Element | Claim Language |
| --- | --- |
| [P] | A system for separating solids from a slurry recovered from a hydrocarbon well, comprising: |
| [1] | a tank having sloping side walls, a bottom, and a top, the tank having a front section, a mid-section, and a rear section; |
| [2] | one or more degassing units operatively associated with the tank, the one or more degassing units removing an entrained gas from the slurry and discharging a first slurry into the tank whereby a first settling of a first solids within the first slurry takes place; |
| [3] | a conveying device operatively positioned on the bottom of the tank, the conveying device configured to cause the first solids to move proximate to an inlet of a first conduit operatively positioned within the tank; |
| [4] | a pump in fluid communication with the first conduit, the pump configured to pump a second slurry containing the first solids through the first conduit; |
| [5] | one or more hydrocyclone units in fluid communication with an outlet of the first conduit, the one or more hydrocyclone units receiving and processing the second slurry to produce an overflow comprising a first clean fluid and an underflow comprising the first solids; |
| [6] | a shaker operatively positioned underneath the one or more hydrocyclone units, the shaker configured to receive the underflow from the one or more hydrocyclone units and to cause a dewatering of the first solids to produce a dried first solids, the shaker further configured to convey the dried first solids for disposal or reuse, the shaker producing an underflow comprising a third slurry comprising a second solids, the shaker configured for depositing the third slurry into the tank for recirculation through the first conduit to the one or more hydrocyclone units; |

11

#112171557v4

| Element | Claim Language |
|---|---|
| [7] | a second conduit having an inlet and an outlet, the inlet of the second conduit in operative association with the one or more hydrocyclones to receive and provide a flow path for the overflow comprising the first clean fluid, the outlet of the second conduit operatively positioned within the tank for discharge of the overflow comprising the first clean fluid therein; and |
| [8] | an overflow device operatively positioned within the tank, the overflow device configured to provide an outlet for the first clean fluid to exit the tank. |

62.    The Hydrocyclone Accused System is a system for separating solids from a slurry recovered from a hydrocarbon well. The system is used in flowback operations and configured to remove solids, including sand, from well fluids. *See* Exhibit E. This corresponds to the preamble of Claim 1 of the '406 Patent.

63.    The Hydrocyclone Accused System includes a tank having sloping side walls, a bottom, and a top, the tank having a front section, a mid-section, and a rear section. Photographs show an elongated tank body consistent with a flowback separation tank. Upon information and belief, the tank includes sloping side walls configured to promote settling of solids toward the bottom of the tank. *See* Exhibit E. This corresponds to element [1] of Claim 1 of the '406 Patent.

64.    The Hydrocyclone Accused System includes one or more degassing units operatively associated with the tank. Upon information and belief, the gas buster removes entrained gas from the slurry and discharges a first slurry into the tank, whereby solids settle within the slurry. *See* Exhibit E. This corresponds to element [2] of Claim 1 of the '406 Patent.

65.    Upon information and belief, the Hydrocyclone Accused System includes a conveying device in the form of an auger operatively positioned on the bottom of the tank. Upon information and belief, the auger is positioned along the bottom of the tank and is configured to move settled solids proximate to an inlet of a first conduit positioned within the tank. *See* Exhibit E. This corresponds to element [3] of Claim 1 of the '406 Patent.

#112171557v4

66.     Upon information and belief, the Hydrocyclone Accused System includes a pump in fluid communication with the first conduit, configured to pump a second slurry containing settled solids through the first conduit. The visible equipment and piping show a flow path for moving slurry from the tank toward the separation equipment. *See* Exhibit E. This corresponds to element [4] of Claim 1 of the '406 Patent.

67.     The Hydrocyclone Accused System includes one or more hydrocyclone units in fluid communication with an outlet of the first conduit. Upon information and belief, the hydrocyclones receive and process the second slurry to produce an overflow comprising clean fluid and an underflow comprising solids. *See* Exhibit E. This corresponds to element [5] of Claim 1 of the '406 Patent.

68.     The Hydrocyclone Accused System includes a shaker operatively positioned underneath the one or more hydrocyclone units. Upon information and belief, the shaker receives the underflow from the hydrocyclones and dewaters solids to produce dried solids for disposal or reuse. Upon information and belief, the shaker also produces an underflow comprising a third slurry containing additional solids and deposits that slurry back into the tank for recirculation through the first conduit to the hydrocyclone units. *See* Exhibit E. This corresponds to element [6] of Claim 1 of the '406 Patent.

69.     Upon information and belief, the Hydrocyclone Accused System includes a second conduit having an inlet and an outlet. The inlet is operatively associated with the hydrocyclones to receive and provide a flow path for the hydrocyclone overflow comprising clean fluid, and the outlet is operatively positioned within the tank for discharge of the clean-fluid overflow into the tank. Visible piping associated with the system supports the existence of such fluid routing. *See* Exhibit E. This corresponds to element [7] of Claim 1 of the '406 Patent.

13

70.     Upon information and belief, the Hydrocyclone Accused System includes an overflow device operatively positioned within the tank and configured to provide an outlet for clean fluid to exit the tank. *See* Exhibit E. This corresponds to element [8] of Claim 1 of the '406 Patent.

71.     Accordingly, Texas J&A's manufacture, use, rental, sale, offer for sale, importation, marketing, and/or commercialization of the Hydrocyclone Accused System infringes at least Claim 1 of the '406 Patent.

72.     Texas J&A has damaged DEL in an amount to be determined at trial.

73.     At least upon service of this Complaint, if not earlier as of the November 14, 2025, correspondence with DEL's counsel, Texas J&A had or will have knowledge of the '406 Patent and its infringement thereof. Texas J&A's continued infringement after such notice will be willful, deliberate, and in disregard of DEL's patent rights.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 10,751,654

74.     DEL repeats and realleges the preceding paragraphs as if fully set forth herein.

75.     Texas J&A has directly infringed and continues to directly infringe at least Claim 1 of the '654 Patent under 35 U.S.C. § 271(a) by making, using, renting, selling, offering to sell, importing, marketing, and/or commercializing the Hydrocyclone Accused System.

76.     Claim 1 of the '654 Patent recites the following limitations, with bracketed labels added for ease of reference:

### Claim 1 of the '654 Patent

| Element | Claim Language |
| --- | --- |
| [P] | A system for separating solids from a slurry recovered from a hydrocarbon well, comprising: |
| [1] | a tank including a V-shaped compartment with sloping side walls, a bottom, and a top, the compartment having a front section, a mid-section, and a rear section; |

#112171557v4

| Element | Claim Language |
|---|---|
| [2] | one or more degassing units operatively positioned over the top of the compartment, the one or more degassing units removing an entrained gas from the slurry and discharging a first slurry; |
| [3] | a first series of baffles operatively positioned within the compartment at its mid-section and below the one or more degassing units, the first series of baffles causing a first settling of a first solids within the first slurry; |
| [4] | a shaftless auger operatively positioned on the bottom of the compartment, the shaftless auger configured for rotation to cause the first solids to move to the rear section of the compartment; |
| [5] | a suction pump in fluid communication with a first conduit, the first conduit having an inlet and an outlet, the inlet of the first conduit being operatively positioned within the compartment at its rear section adjacent the shaftless auger, the suction pump configured to pump a second slurry containing the first solids through the first conduit; |
| [6] | one or more hydrocyclone units in fluid communication with the outlet of the first conduit, the one or more hydrocyclone units receiving and processing the second slurry to produce an overflow comprising a first clean fluid and an underflow comprising the first solids; |
| [7] | a linear shaker operatively positioned underneath the one or more hydrocyclone units, the linear shaker configured to receive the underflow from the one or more hydrocyclone units and to cause a dewatering of the first solids to produce a dried first solids, the linear shaker further configured to convey the dried first solids to a storage device for disposal, the linear shaker producing an underflow comprising a third slurry comprising a second solids, the linear shaker configured for depositing the third slurry into the compartment at its rear section for recirculation through the first conduit to the one or more hydrocyclone units; |
| [8] | a second conduit having an inlet and an outlet, the inlet of the second conduit in operative association with the one or more hydrocyclones to receive and provide a flow path for the overflow comprising the first clean fluid, the outlet of the second conduit operatively positioned within the compartment at its mid-section for discharge of the overflow comprising the first clean fluid therein; |
| [9] | a second series of baffles operatively positioned within the compartment at its front section, the second series of baffles causing a second settling of a third solids, the third solids being moved to the rear section of the compartment by the rotation of the shaftless auger; |
| [10] | an underflow weir operatively positioned within the compartment at its front section directly adjacent to a last baffle comprising the second series of baffles, the underflow weir configured to cause the first clean fluid to flow under the underflow weir; and |
| [11] | an overflow pipe operatively positioned within the compartment at its front section directly adjacent to the underflow weir, the overflow pipe configured to provide an outlet for the first clean fluid to exit the tank. |

77.     The Hydrocyclone Accused System is a system for separating solids from a slurry recovered from a hydrocarbon well. The system is configured to separate sand and other solids from oilfield flowback fluids. *See* Exhibit E. This corresponds to the preamble of Claim 1 of the '654 Patent.

78. The Hydrocyclone Accused System includes a tank including a V-shaped compartment with sloping side walls, a bottom, and a top, the compartment having a front section, a mid-section, and a rear section. Photographs show an elongated tank portion of a trailer-mounted flowback separation system. Upon information and belief, the interior compartment includes sloping side walls and a bottom configured to collect settled solids. *See* Exhibit E. This corresponds to element [1] of Claim 1 of the '654 Patent.

79. The Hydrocyclone Accused System includes one or more degassing units operatively positioned over the top of the compartment. Upon information and belief, the gas buster removes entrained gas from the slurry and discharges a first slurry into the tank or compartment. *See* Exhibit E. This corresponds to element [2] of Claim 1 of the '654 Patent.

80. Upon information and belief, the Hydrocyclone Accused System includes a first series of baffles operatively positioned within the compartment at its mid-section and below the one or more degassing units. Upon information and belief, the baffles are configured to slow the movement of slurry through the tank and cause a first settling of solids within the slurry. *See* Exhibit E. This corresponds to element [3] of Claim 1 of the '654 Patent.

81. Upon information and belief, the Hydrocyclone Accused System includes a shaftless auger operatively positioned on the bottom of the compartment. Upon information and belief, the auger is configured for rotation to move settled solids to the rear section of the compartment. *See* Exhibit E. This corresponds to element [4] of Claim 1 of the '654 Patent.

82. Upon information and belief, the Hydrocyclone Accused System includes a suction pump in fluid communication with a first conduit. The first conduit has an inlet and an outlet, and the inlet is operatively positioned within the compartment at its rear section adjacent the shaftless auger. Upon information and belief, the suction pump pumps a second slurry containing settled

16

solids through the first conduit toward the hydrocyclone equipment. *See* Exhibit E. This corresponds to element [5] of Claim 1 of the '654 Patent.

83.     The Hydrocyclone Accused System includes one or more hydrocyclone units in fluid communication with the outlet of the first conduit. Upon information and belief, the hydrocyclones receive and process the second slurry to produce an overflow comprising clean fluid and an underflow comprising solids. *See* Exhibit E. This corresponds to element [6] of Claim 1 of the '654 Patent.

84.     Upon information and belief, the Hydrocyclone Accused System includes a linear shaker operatively positioned underneath the one or more hydrocyclone units. Upon information and belief, the linear shaker receives underflow from the hydrocyclones and dewaters solids to produce dried solids for disposal. Upon information and belief, the linear shaker is configured to convey the dried first solids to a storage device for disposal. Upon information and belief, the linear shaker produces an underflow comprising a third slurry containing additional solids and deposits that third slurry into the compartment at its rear section for recirculation through the first conduit to the hydrocyclone units. *See* Exhibit E. This corresponds to element [7] of Claim 1 of the '654 Patent.

85.     Upon information and belief, the Hydrocyclone Accused System includes a second conduit having an inlet and an outlet. The inlet is operatively associated with the one or more hydrocyclones to receive and provide a flow path for the overflow comprising clean fluid, and the outlet is operatively positioned within the compartment at its mid-section for discharge of the clean-fluid overflow therein. Visible piping associated with the Hydrocyclone Accused System supports the presence of conduits routing fluid between the hydrocyclone equipment and the tank. *See* Exhibit E. This corresponds to element [8] of Claim 1 of the '654 Patent.

#112171557v4

86.     Upon information and belief, the Hydrocyclone Accused System includes a second series of baffles operatively positioned within the compartment at its front section. Upon information and belief, the second series of baffles causes a second settling of additional solids, and those solids are moved to the rear section of the compartment by rotation of the shaftless auger. *See* Exhibit E. This corresponds to element [9] of Claim 1 of the '654 Patent.

87.     Upon information and belief, the Hydrocyclone Accused System includes an underflow weir operatively positioned within the compartment at its front section directly adjacent to a last baffle comprising the second series of baffles. Upon information and belief, the underflow weir is configured to cause clean fluid to flow under the underflow weir. *See* Exhibit E. This corresponds to element [10] of Claim 1 of the '654 Patent.

88.     Upon information and belief, the Hydrocyclone Accused System includes an overflow pipe operatively positioned within the compartment at its front section directly adjacent to the underflow weir. Upon information and belief, the overflow pipe is configured to provide an outlet for clean fluid to exit the tank. *See* Exhibit E. This corresponds to element [11] of Claim 1 of the '654 Patent.

89.     Accordingly, Texas J&A's manufacture, use, rental, sale, offer for sale, importation, marketing, and/or commercialization of the Hydrocyclone Accused System infringes at least Claim 1 of the '654 Patent.

90.     Texas J&A has damaged DEL in an amount to be determined at trial.

91.     At least upon service of this Complaint, if not earlier as of the November 14, 2025, correspondence with DEL's counsel, Texas J&A had or will have knowledge of the '654 Patent and its infringement thereof. Texas J&A's continued infringement after such notice will be willful, deliberate, and in disregard of DEL's patent rights.

18

## DETAILED INFRINGEMENT ALLEGATIONS
## FOR THE HERCULES ACCUSED SYSTEM

92.    Texas J&A has been and continues to directly infringe the '300 Patent by making, using, renting, selling, offering to sell, importing, marketing, and/or commercializing the Hercules Accused System in this District and elsewhere in the United States without DEL's authorization.

93.    The Hercules Accused System embodies each limitation of at least Claim 1 of the '300 Patent, as set forth below.

94.    Texas J&A had pre-suit knowledge of the '300 Patent and DEL's infringement allegations concerning the Hercules Accused System through written correspondence dated June 11, 2025.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 11,040,300

95.    DEL repeats and realleges the preceding paragraphs as if fully set forth herein.

96.    Texas J&A has directly infringed and continues to directly infringe at least Claim 1 of the '300 Patent under 35 U.S.C. § 271(a) by making, using, renting, selling, offering to sell, importing, marketing, and/or commercializing the Hercules Accused System.

97.    Claim 1 of the '300 Patent recites the following limitations, with bracketed labels added for ease of reference:

### Claim 1 of the '300 Patent

| Element | Claim Language |
|---------|----------------|
| [P] | A system for separating solids from a first slurry recovered from a hydrocarbon well, comprising: |
| [1] | a tank having sloping side walls, a bottom, and a top, the tank having a front section, a mid-section, and a rear section; |
| [2] | a degassing unit operatively associated with the tank, the degassing unit configured to remove an entrained gas from the first slurry and discharging a second slurry into the tank whereby a first settling of a first solids within the second slurry takes place; |
| [3] | a conveying device operatively positioned on the bottom of the tank, the conveying device configured to cause the first solids to move proximate to an inlet of a first conduit operatively positioned within the tank; |

19

| Element | Claim Language |
|---|---|
| [4] | a pump in fluid communication with the first conduit, the pump configured to pump a third slurry containing the first solids through the first conduit; |
| [5] | a dispersing device in fluid communication with an outlet of the first conduit, the dispersing device having an interior that receives the third slurry but does not separate the first solids, the dispersing device including an outlet opening through which the third slurry is discharged, the dispersing device being positioned above or adjacent to a shaker whereby the second slurry is discharged through the outlet opening onto the shaker; |
| [6] | the shaker being operatively positioned and configured to receive and process at least a portion of the third slurry and to cause a dewatering of the first solids to produce a dried first solids, the shaker further configured to convey the dried first solids for disposal or reuse, the shaker producing an underflow comprising a fourth slurry comprising a second solids, the shaker configured for depositing the fourth slurry into the tank for recirculation through the first conduit to the dispersing device; and |
| [7] | an overflow device operatively positioned within the tank, the overflow device configured to provide an outlet for a first clean fluid to exit the tank. |

98.     The Hercules Accused System is a system for separating solids from a first slurry recovered from a hydrocarbon well. Public materials identify the system as the "Hercules" Sand Management Unit, and photographs show a flowback separation system configured to process well fluids and remove sand and other solids. *See* Exhibit F. This corresponds to the preamble of Claim 1 of the '300 Patent.

99.     The Hercules Accused System includes a tank having sloping side walls, a bottom, and a top, the tank having a front section, a mid-section, and a rear section. Website and social-media photographs depict an elongated sand-management tank with front, mid, and rear portions. *See* Exhibit F. This corresponds to element [1] of Claim 1 of the '300 Patent.

100.    The Hercules Accused System includes a degassing unit operatively associated with the tank. Photographs and annotated materials identify degassing equipment associated with the tank. Upon information and belief, the degassing unit removes entrained gas from the first slurry and discharges a second slurry into the tank whereby a first settling of solids takes place. *See* Exhibit F. This corresponds to element [2] of Claim 1 of the '300 Patent.

20

101.    Upon information and belief, the Hercules Accused System includes a conveying device operatively positioned on the bottom of the tank, configured to cause settled solids to move proximate to an inlet of a first conduit positioned within the tank. The system configuration, including the visible tank and solids-management equipment, supports the presence of an internal conveying device for moving settled solids through the system. *See* Exhibit F. This corresponds to element [3] of Claim 1 of the '300 Patent.

102.    Upon information and belief, the Hercules Accused System includes a pump in fluid communication with the first conduit, configured to pump a third slurry containing the first solids through the first conduit. Public and annotated photographs show conduit and flow path components associated with the tank and downstream separation equipment. *See* Exhibit F. This corresponds to element [4] of Claim 1 of the '300 Patent.

103.    The Hercules Accused System includes a dispersing device in fluid communication with an outlet of the first conduit. Annotated photographs identify a dispersing-device or feedbox-style component. Upon information and belief, the dispersing device has an interior that receives the third slurry but does not separate the first solids, includes an outlet opening through which the third slurry is discharged, and is positioned above or adjacent to a shaker so that slurry is discharged through the outlet opening onto the shaker. *See* Exhibit F. This corresponds to element [5] of Claim 1 of the '300 Patent.

104.    The Hercules Accused System includes a shaker operatively positioned and configured to receive and process at least a portion of the slurry discharged from the dispersing device and to dewater solids to produce dried solids. Upon information and belief, the shaker conveys dried solids for disposal or reuse and produces an underflow comprising a fourth slurry

21

that is deposited into the tank for recirculation through the first conduit to the dispersing device. *See* Exhibit F. This corresponds to element [6] of Claim 1 of the '300 Patent.

105. Upon information and belief, the Hercules Accused System includes an overflow device operatively positioned within the tank and configured to provide an outlet for clean fluid to exit the tank. A flowback separation tank of this type is expected to include a fluid outlet or overflow device for discharge of processed clean fluid. *See* Exhibit F. This corresponds to element [7] of Claim 1 of the '300 Patent.

106. Accordingly, Texas J&A's manufacture, use, rental, sale, offer for sale, importation, marketing, and/or commercialization of the Hercules Accused System infringes at least Claim 1 of the '300 Patent.

107. Texas J&A has damaged DEL in an amount to be determined at trial.

108. Texas J&A's infringement of the '300 Patent has been and continues to be willful because Texas J&A had knowledge of the '300 Patent and DEL's infringement allegations at least as early as the June 11, 2025, written notice and nevertheless continued its infringing activity.

## COUNT V
### INDIRECT INFRINGEMENT OF
### U.S. PATENT NOS. 10,751,654, 11,040,300, 11,326,406, and 11,634,953

109. DEL repeats and realleges the preceding paragraphs as if fully set forth herein.

110. On information and belief, Texas J&A actively induces infringement of the Asserted Patents under 35 U.S.C. § 271(b) by encouraging, instructing, directing, and/or otherwise causing customers, operators, contractors, and end users to use the Accused Systems in an infringing manner.

111. Texas J&A's acts of inducement include, without limitation, marketing, renting, selling, deploying, servicing, and supporting the Accused Systems for use in flowback separation

22

operations in the manner described and claimed in the Asserted Patents. Upon information and belief, Texas J&A's acts of inducement further include, without limitation, providing operating manuals, training, on-site technical personnel, commissioning services, spare parts, and operating specifications that instruct customers and operators to configure and operate the Accused Systems in the manner claimed in the Asserted Patents. Upon information and belief, Texas J&A's customers and the operators of the Accused Systems have directly infringed the Asserted Patents by operating the Accused Systems as Texas J&A instructs.

112.    Texas J&A has knowledge of the '300 Patent and its infringement of the '300 Patent at least as early as the June 11, 2025, written notice. At least upon service of this Complaint, if not earlier as of the November 14, 2025, correspondence with DEL's counsel, Texas J&A had or will have knowledge of all Asserted Patents and its infringement thereof.

113.    On information and belief, Texas J&A also contributorily infringes the Asserted Patents under 35 U.S.C. § 271(c) by offering to sell, selling, renting, and/or providing components for use in practicing the inventions claimed in the Asserted Patents. Such components constitute a material part of the claimed inventions, are not staple articles or commodities of commerce, and have no substantial non-infringing uses. Upon information and belief, Texas J&A knows the components to be especially made or especially adapted for use in an infringement of the Asserted Patents.

### COUNT VI
### WILLFUL INFRINGEMENT

114.    DEL repeats and realleges the preceding paragraphs as if fully set forth herein.

115.    Texas J&A had pre-suit knowledge of the '300 Patent and DEL's infringement allegations concerning the Hercules Accused System through written notice dated June 11, 2025.

23

116. Despite that notice, Texas J&A continued to make, use, rent, sell, offer to sell, import, market, and/or commercialize the Hercules Accused System.

117. On information and belief, Texas J&A's continued infringement of the '300 Patent after receiving notice has been willful, deliberate, and in conscious disregard of DEL's patent rights.

118. At least upon service of this Complaint, if not earlier as of the November 14, 2025, correspondence with DEL's counsel, Texas J&A had or will have knowledge of the Sandcat Patents and its infringement thereof through the Hydrocyclone Accused System.

119. Texas J&A's continued infringement of the Sandcat Patents after service of this Complaint or after November 14, 2025, is or will be willful, deliberate, and in conscious disregard of DEL's patent rights.

120. DEL reserves the right to seek enhanced damages under 35 U.S.C. § 284 based on Texas J&A's willful infringement and based on evidence developed during discovery.

**IRREPARABLE HARM AND DAMAGES**

121. Texas J&A's infringement has caused and continues to cause DEL injury, including irreparable injury.

122. DEL has suffered and will continue to suffer damages as a result of Texas J&A's infringement in an amount to be determined at trial, including lost profits and/or in no event less than a reasonable royalty.

123. Texas J&A's continued infringement threatens DEL's market position, customer relationships, goodwill, and ability to exclude others from practicing the claimed inventions.

124. DEL is entitled to preliminary and permanent injunctive relief under 35 U.S.C. § 283 restraining and enjoining Texas J&A, its officers, agents, servants, employees, attorneys,

24

affiliates, customers, representatives, successors, assigns, and all persons acting in active concert or participation with any of them from infringing the Asserted Patents.

125.    DEL is entitled to damages adequate to compensate for Texas J&A's infringement under 35 U.S.C. § 284, together with interest and costs.

126.    This is an exceptional case under 35 U.S.C. § 285, and DEL is entitled to recover its reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, DEL respectfully requests that the Court enter judgment in its favor and against Texas J&A and grant the following relief:

A.    A judgment that Texas J&A has infringed one or more claims of each of the Asserted Patents;

B.    A judgment that Texas J&A has directly infringed, induced infringement of, and/or contributorily infringed the Asserted Patents;

C.    A judgment that Texas J&A's infringement of the '300 Patent is willful;

D.    A judgment that Texas J&A's infringement of the Sandcat Patents is willful;

E.    An order preliminarily and permanently enjoining Texas J&A and all persons acting in concert with it from infringing the Asserted Patents;

F.    An award of damages adequate to compensate DEL for Texas J&A's infringement, including lost profits and/or in no event less than a reasonable royalty, together with interest and costs as fixed by the Court;

G.    An award of enhanced damages under 35 U.S.C. § 284;

H.    A determination that this is an exceptional case under 35 U.S.C. § 285 and an award of DEL's reasonable attorneys' fees;

#112171557v4

I.      An award of pre-judgment and post-judgment interest;

J.      An award of DEL's costs of suit;

K.      An accounting of all infringing acts and an award of supplemental damages for any infringement occurring after the period covered by the evidence at trial, including post-verdict and pre-judgment infringement, together with interest; and

L.      Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

DEL demands a trial by jury on all issues so triable.

#112171557v4

Respectfully submitted,

**JONES WALKER LLP**

Dated: August 10, 2026

_____

Lara D. Pringle
TX Bar No. 24056164
811 Main St, Suite 2900
Houston, Texas 77002
Tel:  713.437.1831
Fax:  713.437.1810
Email: lpringle@joneswalker.com


Michael K. Leachman
LA Bar No. 30158, *pro hac vice* to be filed
Olivia G. Wolf
LA Bar No. 40385, *pro hac vice* to be filed
445 North Boulevard, Suite 800
Baton Rouge, LA 70802
Tel.:    (225) 248-2000
Fax:    (225) 248-2010
Email: mleachman@joneswalker.com
        owolf@joneswalker.com

and

Hugh A. Warren
MS Bar No. 106711, *pro hac vice* to be filed
3100 North State Street, Suite 300
Jackson, MS 39216
Tel.:    (601) 949-4852
Fax:    (601) 949-4804
Email: hwarren@joneswalker.com

***Attorneys for Plaintiff DEL Corporation***

27